UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Cause No. 1:23-CR-12-HAB |
| | ) | |
| HAMED A. MARTIN | ) | |

**OPINION AND ORDER**

Defendant pleaded guilty to a single count of distributing methamphetamine. Now before the Court are Defendant's objections to two sentencing enhancements. (ECF No. 117). The Court held an evidentiary hearing on the objections (ECF No. 123) and briefing on the objections is now complete (ECF Nos. 128, 131, 132). Because the Court finds the enhancements have been proved by a preponderance of the evidence, the objections will be overruled.

**I.     Factual Background**

The evidence supporting Defendant's charges, and in turn the enhancements, comes from three controlled buys at a residence on Eckart Street in Fort Wayne, Indiana, ("Residence") and a search of the Residence. The Court will address each in turn.

**A.     *Controlled Buy #1***

Defendant was observed leaving the Residence twice on the day of the first controlled buy, including to meet the confidential human source ("CHS"). Defendant sold the CHS 22.5 grams of methamphetamine. Defendant argues the methamphetamine was delivered to the Residence shortly before the transaction.

**B.     *Controlled Buy #2***

Surveillance again observed Defendant come and go from the Residence on the day of the second controlled buy. In fact, the CHS arrived at the Residence for a pre-planned transaction

while Defendant had left to get gas. This caused the CHS to send Defendant a text message stating that he did not want to sit outside "your crib." Defendant promptly returned and, after another apparent delivery of narcotics, Defendant made another sale of methamphetamine to the CHS.

**C.**     ***Controlled Buy #3***

On the day of the third controlled buy, Defendant texted the CHS to "meet at [Defendant's] house," referring to the Residence. Once again, Defendant received a delivery of narcotics at the Residence and, again, sold methamphetamine to the CHS at the Residence. Just like the other days, Defendant was seen coming and going from the Residence on the day of the third buy.

**D.**     ***Search Warrant***

A search warrant for the Residence was executed almost a month after the controlled buys. Officers found a set up in the living room for distributing narcotics, including scales, a spoon, baking powder, and a Pyrex container. The scales, spoon, and container all tested positive for cocaine. A loaded firearm was found in the master bedroom. A loaded magazine for the firearm was found in a vehicle registered in Defendant's name. The vehicle was seen at the Residence during each of the controlled buys. Officers also found paperwork with Defendant's name on it inside the Residence.

Defendant was interviewed following the execution of the warrant. Defendant did not correct officers when they stated they had a warrant for Defendant's house, referring to the Residence. Defendant admitted staying at the Residence "from time to time" for two years prior. While Defendant denied selling drugs, he did not deny owning the firearm.

Defendant's phone was seized and downloaded. Evidence of drug trafficking at the Residence was found. The evidence included sales of cocaine and methamphetamine.

## II. Legal Discussion

### A. *U.S.S.G. § 2D1.1(b)(12)*

The guidelines provide for a two-level sentence enhancement "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). The application notes clarify that "[m]anufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses for the premises." *Id*.

A defendant maintains a drug premises "if he owns or rents [the] premises, or exercises control over them, and for a sustained period of time, uses those premises to manufacture, store, or sell drugs, or directs others to those premises to obtain drugs." *United States v. Acosta*, 534 F.3d 574, 591 (7th Cir. 2008). The defendant need not have owned or rented the premises, but to exercise the requisite control, he must have been more than a casual visitor. *Id*. A defendant can maintain the premises even if he does not exercise control to the exclusion of all others. *United States v. Sanchez*, 810 F.3d 494, 497 (7th Cir. 2016).

"[T]o determine whether drug distribution was a primary or incidental use, the district courts are not required to apply a simple balancing test that compares the frequency of unlawful activity at the residence with the frequency of lawful uses." *United States v. Contreras*, 874 F.3d 280, 284 (7th Cir. 2017) (per curiam). That is because "such a test would immunize every family home that is also used for drug distribution from being deemed an illegally maintained 'premises,'" since "the amount of lawful activity in a home is all but certain to exceed the amount of illegal activity." *Id*. Instead, "the sentencing court should focus on both the frequency and significance of the illicit activities." *Id*. "Neither a specific frequency nor a particular significance automatically

3

warrants applying the enhancement." *United States v. Sanchez*, 710 F.3d 724, 731 (7th Cir. 2013), vacated on other grounds, *Sanchez v. United States*, 571 U.S. 801 (2013). "Rather, we consider the two in tandem and determine whether the prohibited purpose can be fairly described as a 'primary or principal' use of the premises." *Id*. Factors relevant to this analysis include "quantities dealt, customer interactions, keeping 'tools of the trade' and business records, and accepting payment." *Contreras*, 874 F.3d at 284.

Defendant's protestations aside, the Court does not find the application of the enhancement to be a particularly close call. Defendant was seen, three times over two weeks, selling drugs from the Residence. There is no evidence that he sold drugs from any other location. He kept "tools of the trade" at the Residence, including scales, spoons, and a container that all tested positive for cocaine. He accepted payment for the drugs at the home. All these factors point directly to the obvious conclusion that Defendant maintained the Residence to distribute drugs.

Defendant's argument at the hearing appeared to be that he did not "maintain" the Residence because he lived elsewhere. Defendant testified that he lived with his mother and pointed to mail that he received at his mother's residence. But Defendant concedes in his brief that this issue over where Defendant lived is irrelevant, as he admits that the enhancement is properly applied if he used the Residence for his drug enterprise. (ECF No. 131 at 19). And, not for nothing, the Court found Defendant's hearing testimony to be wholly non-credible. The Court finds ample evidence, from his easy coming and going at the Residence, to the paperwork bearing his name, to the location of his vehicles, shows that Defendant maintained the Residence.

Defendant's brief fares no better. Defendant stresses that drugs were not stored at the Residence—no significant quantities were found, and drugs for each transaction were delivered just before. But the Court fails to see how that helps. While storage of drugs at the residence might

support the enhancement, the Seventh Circuit has "cautioned that other courts' reliance on certain facts as justifying this enhancement 'does not mean that those facts necessarily must be shown in every case.'" *United States v. Ford*, 22 F.4th 687, 694 (7th Cir. 2022). The Court finds that Defendant's repeated use of the Residence as his sole place of drug dealing makes up for any lack of drug storage. If anything, the fact that drugs were stored elsewhere shows that dealing from the Residence was not a matter of convenience, but of choice. Defendant selected the Residence as the center for his drug distribution, and the Court will honor that choice.

**B.    *U.S.S.G. § 2D1.1(b)(1)***

The guidelines also provide, "[i]f a dangerous weapon (including a firearm) was possessed, increase by 2 levels." U.S.S.G. § 2D1.1(b)(1). The commentary to this section states that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *Id*. § 2D1.1(b)(1) Application Note 3. The enhancement accounts for the increased danger to law enforcement presented when drug dealers and traffickers arm themselves. *United States v. Cashman*, 216 F.3d 582, 587 (7th Cir. 2000).

Under § 2D1.1(b)(1), the government must first establish by a preponderance of the evidence that the defendant possessed a weapon in a place where drugs were present, before the burden of persuasion shifts to the defendant to demonstrate that it was clearly improbable that the weapon was connected with the drug offense. *United States v. Grimm*, 170 F.3d 760, 767 (7th Cir. 1999). The government may meet its burden by showing actual or constructive possession. *See United States v. Wetwattana*, 94 F.3d 280, 283 (7th Cir. 1996). Possession of an object, whether actual or constructive, exists when a person exercises control over the object. *Id*. at 283–84 and n. 4 (citing *United States v. Garrett*, 903 F.2d 1105, 1110 (7th Cir. 1990)).

If the only evidence supporting the enhancement was the gun found at the Residence, the Court would be inclined to sustain the objection. The firearm was found in a different room than the trace amounts of cocaine found in the living room. There is no evidence or testimony that Defendant was armed during any of the controlled buys. The Court concedes that law enforcement found little that connects that firearm to any drug activity.

But like so many other cases, Defendant's own words are his undoing. The Government produced text messages from Defendant to a customer that, apparently, had paid Defendant with a fake $100 bill. Defendant texted saying, "Dude you gonna give me a fake hundred had me an my people pulling guns on each other man I'm on my way over there." (ECF No. 128 at 19) (all sic). The Government interprets this text as showing that Defendant "possess[ed] a gun during a payment dispute with his supplier," an interpretation the Court shares. Indeed, that's the only interpretation given, as Defendant didn't so much as acknowledge the text in his brief. The Court finds that the Government has carried its burden of connecting Defendant's possession of a firearm to his drug crimes, supporting the enhancement.

**III.   Conclusion**

For these reasons, Defendant's objections to the PSR (ECF No. 117) are OVERRULED.

SO ORDERED on January 17, 2025.

                                                  s/ *Holly A. Brady*
                                                  JUDGE HOLLY A. BRADY
                                                  UNITED STATES DISTRICT COURT